**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **OLGA S.**,<br><br>      *Plaintiff,*<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY**,<br><br>      *Defendant*. | No. 25-cv-01443<br><br>**OPINION** |

<u>**APPEARANCES**</u>:

**Olga S.,** *Pro Se*


**Hannah Marie Dawson**
**Sarah Noel Hibbert**
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Olga S.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A.  Administrative History

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 26, 2023, alleging a disability onset date of July 23, 2020. (AR 57). She claims physical disabilities related to arthritis, and various mental health issues. (*Id.*). Her claim was initially denied on May 15, 2023, and was denied again upon reconsideration on August 26, 2023. (AR 66–70, 75–78).

On October 2, 2023, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 79–83). The ALJ held a hearing by video conference on March 28, 2024. (AR 25–46). Plaintiff testified at the hearing and, as she does here, appeared *pro se* before the ALJ. (*Id.*).

The ALJ issued a Decision denying Plaintiff's application for DIB on May 6, 2024. (AR 8-21). Plaintiff appealed the decision to the Appeals Council, (AR 103–105), which denied her request for review on December 20, 2024. (AR 1–3). Plaintiff timely filed this appeal on February 24, 2025. (ECF No. 1).

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

### B. Plaintiff's Background and Testimony

At the time of her alleged onset date of July 23, 2020, Plaintiff was 38 years old. (AR 57, 132). Despite having a college education, Plaintiff has never worked and has no past relevant work history. (AR 32–33). She is a native Russian speaker and has limited proficiency in English. (Pl.'s Br. ECF No. 8 at 12–14).

At the hearing before the ALJ, Plaintiff testified, in English, that her mental and physical problems prevented her from interacting with people and from working. (AR 33–37). Specifically, she testified that she suffers from anxiety, depression, schizoaffective disorder, and posttraumatic stress disorder ("PTSD"). (AR 33–34). She further testified that she has arthritis primarily causing pain in her left leg. (AR 35–37). She also reported difficulty interacting with people, concentrating, sitting or standing for too long, and an inability to carry any weight due to issues in her leg. (AR 34–36). However, Plaintiff can perform multiple household tasks, such as shopping for groceries, preparing meals, cleaning, and doing laundry, and also participates in recreational activities like jewelry making and attending yoga classes. (AR 37–38, 332, 382–383, 437, 528–531).

### C. Medical History

Numerous medical providers have evaluated Plaintiff over the course of her disability claim. She alleges disability based on her physical impairments in her left hip, and various mental impairments. (AR 57).

#### 1. Physical Impairments

On June 21, 2022, Plaintiff saw treating orthopedic surgeon Joseph Bernardini, M.D. ("Dr. Bernardini") for her left hip pain. (AR 332–333). Notes from her visit indicate she had surgery on her left hip in 2001. (*Id.*). Plaintiff reported to Dr. Bernardini that she experienced pain while doing exercises and stretches. (*Id.*). Dr. Bernardini's evaluation notes indicate that Plaintiff had lost

approximately 5–10 degrees of internal and external rotation, but that her abduction was otherwise normal. (AR 333). Overall, Dr. Bernardini concluded that Plaintiff was doing well enough not to refer her for hip arthroplasty. (*Id.*).

On September 12, 2022, Plaintiff saw treating orthopedic surgeon Mark Levitsky, M.D. ("Dr. Levitsky") for her left hip pain. (AR 334–344). Dr. Levitsky reviewed x-rays that were taken during Plaintiff's prior visit to Dr. Bernardini and concluded that there were significant degenerative changes in Plaintiff's left hip. (AR 335). But Dr. Levitsky noted that Plaintiff otherwise walked with a normal gait pattern and that her neurological status was intact. (*Id.*).

On April 18, 2023, Plaintiff saw examining family medicine physician Juan Cornejo, M.D. ("Dr. Cornejo") for her left hip pain. (*See* AR 527–535). On a ten-point scale, with ten being the most painful, Plaintiff rated her hip pain as a four. (AR 527). Plaintiff also reported to Dr. Cornejo that she had difficulty with frequent bending, prolonged walking and sitting, and heavy lifting. (AR 531). Dr. Cornejo opined that Plaintiff walked with an effective gait and exhibited no difficulty with partially squatting and no significant deficit to light touch and pinprick sensations. (AR 529–530). Dr. Cornejo concluded that Plaintiff had no significant balance limitations, and that she was more than likely able to handle, carry, and lift objects ranging in sizes from fine to medium. (AR 531).

Finally, on August 22, 2023, state agency physician Dr. Kenneth DeFusco ("Dr. DeFusco") evaluated Plaintiff, and opined that Plaintiff could sit for six hours and stand and/or walk for four hours in an eight-hour workday. (AR 61–64).

### 2. Mental Impairments

Plaintiff has a documented history of depression, bipolar disorder, schizoaffective disorder and PTSD. (AR 265). On August 15, 2020, Plaintiff saw treating physician assistant Allendre

Lindor, P.A. ("Mr. Lindor"), for her depression and other mental ailments. (AR 265–268). Mr. Lindor concluded that Plaintiff was oriented to time, place, person, and situation, and that she showed appropriate mood and affect with normal insight and judgment. (AR 267). Mr. Lindor further noted that Plaintiff was currently without psychotic features. (*Id.*).

From September 16, 2020 through May 17, 2022, Plaintiff saw treating therapist Katherine Maull, L.P.C. ("Ms. Maull") for symptoms of depression, anxiety, sadness, hopelessness, helplessness, loss of energy, poor focus, forgetfulness, and psychosis. (*See* AR 368–526). During that time, Ms. Maull noted that Plaintiff was angry, depressed, subject to paranoid thoughts, and afflicted with a mildly impaired memory. (AR 358–385).

On May 19, 2022, in response to a request from the Division of Vocational Rehabilitation Services, Plaintiff underwent a consultative examination by clinical psychologist Alan Gordon, Ed.D ("Dr. Gordon"). (AR 322–331). At the examination, Plaintiff complained of depression, anxiety, insomnia, poor memory, poor concentration, paranoia, and difficulty being around others. (AR 323). Dr. Gordon diagnosed Plaintiff with PTSD and paranoid thoughts and further noted that treatment options were limited due to Plaintiff's refusal to pursue treatments such as psychotherapy. (AR 328).

From March 14, 2023 through August 15, 2023, Plaintiff saw counselor Marnique Funches, L.S.W. ("Ms. Funches") for treatment related to her complaints of hopelessness, anxiety, and depression. (*See* AR 546–588). Ms. Funches' August 15, 2023 treatment plan reflects that Plaintiff continued to experience significant depressive and anxiety symptoms, including daily irritability, social conflict, social withdrawal, impaired concentration, visual and auditory hallucinations, paranoia, hypervigilance, sleep disturbance, and depression rated at eight to nine on a scale of one to ten. (AR 578–581).

5

During that same year, between April 4 and August 8, Plaintiff saw treating advance practice nurse Sauda Umutesi, A.P.N. ("Ms. Umutesi") for her complaints of sadness, low energy, poor focus, and low motivation. (*See* AR 596–616). Ms. Umutesi's treatment notes indicate that Plaintiff exhibited poor insight, but that she was alert, oriented to three spheres, and exhibited intact memory, attention, and concentration. (AR 597–604).

Finally, on August 17, 2023, state agency psychologist Dr. Bryan McIntyre, Ph.D. ("Dr. McIntyre") evaluated Plaintiff for her mental impairments. (*See* AR 57–60). Dr. McIntyre opined that Plaintiff had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and a mild limitation in understanding, remembering, or applying information. (AR 59).

**D.  Testimony of Vocational Expert**

At the hearing before the ALJ, the ALJ posed several hypotheticals to the VE. (AR 40–43). According to the VE, all responses to the hypotheticals were consistent with the Dictionary of Occupational Titles ("DOT"). (AR 42).

The first hypothetical assumed an individual with Plaintiff's vocational profile with the following limitations:

> [This individual] can occasionally lift and carry 20 pounds and frequently lift and carry ten pounds. This individual can sit for six hours in an eight-hour workday and stand or walk for a total of four hours in an eight-hour workday. This individual can occasionally climb ramps and stairs and crouch, but never climb ladders, ropes, and scaffolds, kneel or crawl. This individual has no Limitation with respect to the ability to stoop or balance on uneven or slippery surfaces. And can understand, remember, and carry out simple instructions for two-hour intervals over the course of an eight-hour workday and 40-hour work week. This individual can tolerate occasional interaction with coworkers, supervisors, and the general public. And can adapt to simple changes in workplace routine.

(AR 40). The VE testified that such an individual could do work as a price marker, small parts assembler, and electrical assembly work. (AR 40–41).

6

The second hypothetical incorporated the limitations in the first hypothetical, and added the limitation that the "individual would be off task for 20 percent of the workday due to symptoms relating to physical and mental impairments." (AR 41). The VE testified that such a limitation would rule out all work. (AR 41–42).

The third hypothetical also incorporated the limitations in the first hypothetical, and added the limitation that the "individual would need to be absent from work two days per month." (AR 42). The VE testified that such a limitation would rule out all work and, generally, that any absence over one day per month would not be tolerated by employers. (*Id.*).

Plaintiff cross-examined the VE and posed an additional hypothetical. (AR 42–43). This hypothetical assumed the conditions in the first hypothetical posed by the ALJ, but added the limitations that the "individual can only lift and carry less than five pounds . . . can sit, stand, and walk for less than two hours each in an eight-hour workday. . . [and] can never climb ramps, stairs, ladders, ropes, and scaffolds, kneel, and crawl, stoop, balance, or crouch." (AR 42). The VE testified that such limitations would rule out all work. (*Id.*).

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at \*4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient

development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If [s]he is, [s]he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, [s]he is not disabled. If [s]he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, [s]he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether [s]he can perform [her] "past relevant work." A claimant's "[RFC] is the most [she] can still do despite [his] limitations." If the claimant can perform [her] past relevant work despite [her] limitations, [s]he is not disabled. If [s]he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering [her] "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, [s]he is not disabled. If [s]he cannot, [s]he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. <u>ALJ DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since the application date of January 26, 2023. (AR 13).

At step two, the ALJ determined that Plaintiff had the following severe impairments: left hip osteoarthritis, major depressive disorder, and schizophrenia. (*Id.*).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the requirements of any listing in the regulations. (*Id.*). Specifically, in evaluating the "paragraph B" criteria of the regulations, the ALJ found that Plaintiff had moderate limitations in three broad areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR 14–15).  The ALJ further found that Plaintiff had a mild limitation in understanding, remembering, or applying information. (*Id.*). The ALJ also found the "paragraph C" criteria were not satisfied because the record did not establish that Plaintiff had marginal adjustment capabilities, which requires a claimant to have a minimal capacity to adapt to changes in their environment or to demands not already a part of the claimant's life. (AR 15).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform light work subject to the following limitations:

> [She] can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can sit for 6 hours and stand/walk for a total of 4 hours in an 8-hour workday. She can occasionally climb ramps and stairs and crouch, never climb [ladders], kneel or crawl. She has no limitation with respect to the ability to stoop or balance on uneven or slippery surfaces. She can understand, remember and carry out simple instructions for 2-hour increments in an 8-hour workday 40-hour workweek. She can tolerate occasional interaction with coworkers, supervisors and the general public. She can adapt to simple changes in workplace routine.

(AR 15). In formulating this RFC, the ALJ considered the entire record, including Plaintiff's testimony, treatment history, and opinion evidence. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (AR 16–19). The ALJ noted that

Plaintiff's mental status examinations showed intact cognitive functioning, memory, attention, and concentration; imaging of her left hip showed only moderate osteoarthritis; and other objective clinical findings showed that Plaintiff had an effective gait and no significant neurological deficits. (*Id.*).

The ALJ also found partially persuasive the opinion of Dr. McIntyre, the state agency psychologist, and persuasive the opinion of Dr. DeFusco, the state agency physician. (AR 19–20). Specifically, the ALJ credited Dr. McIntyre's opinion that Plaintiff had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself, and that she had mild limitations in understanding, remembering, or applying information. (AR 19). The ALJ also credited Dr. McIntyre's opinion that Plaintiff could: understand and retain simple and complex instructions; complete simple and complex tasks for six to eight hours in an eight-hour period at an appropriate pace; relate effectively with public and prospective co-workers; and adapt to most changes and task demands on a sustained basis. (*See* AR 57–64). The ALJ found Dr. McIntyre's opinions consistent with the record and other testimony, except for the opinions that Plaintiff could understand and retain simple and complex instructions, and complete simple and complex tasks for six to eight hours in an eight-hour period at an appropriate pace.[2] (AR 19–20). In short, the ALJ found Dr. McIntyre's opinion only partially persuasive due to some inconsistencies with evidence in the record, specifically his opinions that Plaintiff had difficulty remembering and concentrating, maintaining focus and attention, and following instructions. (AR

---

[2]    The ALJ inadvertently referenced Dr. Defusco when explaining which part of Dr. McIntyre's opinion was inconsistent with the record. However, given the context of the decision and that the ALJ cited to Dr. McIntyre's report, it is clear to the Court that this was a typographical error and not indicative of any reference to Dr. Defusco's opinion, which the ALJ separately explained to be fully consistent with the record and thus persuasive.

19–20, 57–64, 138–145, 527–535).

The ALJ found the opinion of Dr. DeFusco persuasive and consistent with the objective medical evidence when formulating the RFC. (AR 19). Specifically, Dr. DeFusco opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and that Plaintiff could sit for six hours as well as stand and/or walk for four hours in an eight-hour workday. (*Id.*).

At step four, the ALJ noted that Plaintiff had no past relevant work. (AR 20).

At step five, relying on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy. (AR 20). Specifically, the ALJ identified the occupations of price marker,[3] small parts assembler, and electric assembler as work Plaintiff could perform that exists in significant numbers in the national economy. (AR 20–21). Accordingly, the ALJ found that Plaintiff was not disabled. (AR 21).

## IV. <u>DISCUSSION</u>

In this appeal, Plaintiff asserts that the ALJ erred in three respects. First, Plaintiff argues that several of the ALJ's conclusions as to the existence and severity of her impairments are not supported by substantial evidence. (Pl.'s Br., ECF No. 8 at 9–13). Second, Plaintiff argues that the ALJ failed to consider her language and cultural barriers in formulating the RFC and in posing the various hypotheticals to the VE. (*Id.* at 13–16). Lastly, Plaintiff argues that the ALJ did not follow

---

[3]    The ALJ's decision referred to the "document preparer" position, but cited the DOT number corresponding to "price marker." (AR 21). The record makes clear that reference to "document preparer" was a typographical error. At the hearing, the VE identified the job as "price marker" and provided its corresponding DOT number, which matches the one cited in the ALJ's decision. (*See* AR 40–41). The ALJ's decision also listed 64,000 available positions, the same figure the VE gave for the price marker occupation. (*See* AR 21, 41). This context reveals that the ALJ meant to identify the "price marker" position in substance, and thus the Court proceeds with its review accordingly.

the appropriate evaluation process, ignoring applicable statutes and regulations. (*Id.* at 8, 10–12). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

## A. The ALJ's Decision Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's decision is not supported by substantial evidence at multiple steps of the sequential evaluation. Specifically, she contends that the ALJ: (1) ignored relevant medical evidence from Drs. Levitsky and Gordon; (2) failed to consider the combined effects of her impairments, particularly by understating the severity of her mental health limitations at step three; (3) did not adequately address the side effects of her prescribed medications; and (4) formulated a RFC unsupported by substantial evidence.[4] (Pl.'s Br., ECF No. 8 at 9–12, 14–16). Because "substantial evidence" is only "more than a mere scintilla," and thus not a high evidentiary bar, *Biestek*, 587 U.S. at 102; *see also* 42 U.S.C. § 405(g), the Court finds each of Plaintiff's arguments unavailing.

### 1. The ALJ Appropriately Evaluated the Medical Opinions of Drs. Levitsky and Gordon, and the ALJ's Findings are Supported by Substantial Evidence

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356,

---

[4] In her Reply Brief, Plaintiff alleges errors that were not concretely set forth in her Opening Brief. Although some overlap with her initial arguments, others are entirely new. For example, unlike the Opening Brief—which did not substantively challenge the ALJ's step three findings or analyze any specific listing—the Reply Brief asserts that the ALJ misapplied Listings 1.15, 12.03, 12.04, and 12.06 and contends that the record establishes "marked" or extreme limitations sufficient to satisfy those listings. (*Compare* Pl.'s Br., ECF No. 8 at 6–19, *with* Pl.'s Reply Br., ECF No. 11 at 2–3). Considering Plaintiff's *pro se* status, the Court will construe all her allegations as to errors liberally. But to the extent Plaintiff advances arguments for the first time in her Reply Brief, the Court declines to consider them. *See Ribaudo v. Saul*, No. 17-7207, 2020 WL 5088635, at *10 (D.N.J. Aug. 28, 2020) (recognizing that courts may decline to address arguments raised for the first time in a reply brief in a Social Security appeal).

361 (3d Cir. 2011). In making that determination, the ALJ is entitled to weigh all the evidence in the record and is not bound by specific medical expert opinions. *Brown v. Astrue,* 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted). When an ALJ affords greater weight to one medical expert's opinion over another, they must clearly explain their rationale in order for that finding to be supported by substantial evidence. *Id.* (citation omitted). As long as their reasoning is adequate, the ALJ has discretion to resolve conflicts in the evidence and to determine the weight the competing opinions should be given. *Id.* at 196–97.

Here, the ALJ considered all of the opinions from the treating and consultative medical providers, with specific reference and analysis as to each opinion when determining Plaintiff's RFC. (AR 16–20). Specific to Dr. Levitsky, Plaintiff argues the ALJ erred in excluding or ignoring Dr. Levitsky's medical examination that purported to "limit [her] activity" to no more than 30 minutes of standing and noted her inability to climb or stoop. (*See* Pl.'s Br., ECF No. 8 at 10–12). However, Dr. Levitsky's report was explicitly mentioned in the ALJ's decision, and otherwise does not support the limitations Plaintiff asserts. Rather than suggesting any durational or other specific physical limitations, Dr. Levitsky opined, and the ALJ credited, that Plaintiff walked with a normal gait and exhibited "intact neurological functioning throughout her left lower extremity." (AR 18, 334–44). The Court finds no error in the ALJ's evaluation of Dr. Levitsky's medical examination records as it is based on substantial evidence.

Plaintiff makes a similar argument regarding Dr. Gordon's opinion, contending that the ALJ erred by only giving "some weight" to the opinion, and that Dr. Gordon's opinion as a "treating physician" was entitled to controlling weight. (Pl.'s Br., ECF No. 8 at 11–12). The Court disagrees. Contrary to Plaintiff's assertion, Dr. Gordon was not a "treating physician," but rather evaluated Plaintiff once in response to a request from the Division of Vocational Rehabilitation.

14

(AR 322). Regardless, the ALJ appropriately considered Dr. Gordon's opinion, noting that Plaintiff suffered from a mild cognitive deficit, and like Dr. Levitsky's findings, Dr. Gordon's conclusions are not accurately characterized by Plaintiff. (AR 17, 322–331). For example, Plaintiff's assertion that Dr. Gordon noted "many concerns on employment possibility" is not accurate. (*See* Pl.'s Br. ECF No. 8 at 9). Dr. Gordon did not opine that Plaintiff could not perform basic work activities, nor did he assess any limitations regarding persistence, pace, attendance, or social functioning in a competitive employment environment. Rather, Dr. Gordon's report only notes that Plaintiff is "not a viable candidate for the rehabilitation process at this time," referring to vocational rehabilitation programs offered by the Division, and not to any disability finding or her ability to work. (AR 328).

Although the ALJ's discussion of Drs. Levitsky's and Gordon's medical opinions was not as thorough as that of other medical providers, such as Drs. DeFusco, Cornejo, and McIntyre, there is substantial evidence in the record to support the ALJ's findings. (*See* AR 18–20). And, "a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record." *Manuel v. Astrue*, 697 F. Supp. 2d 576, 581 (D. Del. 2010) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986)). Plaintiff's arguments amount to nothing more than asking the Court to do so here.

### 2. The ALJ Did Not Err in Assessing the Cumulative Effect of Plaintiff's Impairments, Nor in Assessing Claimant's Mental Health Impairments

Next, Plaintiff argues that the ALJ failed to consider the cumulative effects of all her impairments. (Pl.'s Br., ECF No. 8 at 10, 12, 14 (citing *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008); *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149 (3d Cir. 2008); *Ramirez v. Barnhart*, 372 F.3d 546 (2004)). Based on the cases Plaintiff relies upon, it appears she takes issue with the ALJ's step three finding that Plaintiff's impairments or combination of impairments do

15

not "meet[] or medically equal[] the severity of one of the listed impairments" in the regulations. (AR 13). So construed, Plaintiff argues that the ALJ failed to consider the cumulative effects of her rheumatoid arthritis, PTSD, anxiety, depressive disorder, and side effects from her antipsychotic medication, such that, if properly considered, she would have been found disabled at step three. (*See id.*)

At step three, the claimant bears the burden of showing that an impairment meets or medically equals a listed impairment in "Appendix 1" of the regulations. *Torres*, 279 F. App'x at 151. The ALJ must consider all medically determinable impairments, severe and non-severe alike, both individually and in combination. *Luna v. Comm'r of Soc. Sec.*, No. 14-6953, 2016 WL 3763339, at *5 n.1 (D.N.J. July 13, 2016); 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ's decision need not employ particular language to survive substantial evidence review—so long as the record is adequately developed and the ALJ explains the findings sufficiently to permit meaningful review, the Court will not disturb them. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Here, the ALJ set forth a reasoned analysis that is supported by substantial evidence. At step three, the ALJ identified listings in the regulations and considered whether Plaintiff's physical and mental limitations "singly and in combination" meet or medically equal the criteria in those listings. (AR 12–13). As to her physical limitations, the ALJ identified Listing 1.18 for Plaintiff's left hip osteoarthritis, stated the listing's requirement of a documented medical need for a walking assistive device (*e.g.* bilateral canes), and found no such evidence, citing examinations reflecting an effective gait, intact neurological functioning, and no prescription for an assistive device. (AR 13). There is substantial evidence in the record to support these findings.

As to Plaintiff's mental limitations, the ALJ made specific note of each alleged mental impairment—including her PTSD, anxiety, and depression—and compared them with the medical

16

evidence in the record. (AR 14–20). The ALJ then identified Listings 12.03 and 12.04 for Plaintiff's mental impairments, which require evidence of "one extreme limitation or two marked limitations in a broad area of functioning." (AR 14). The ALJ found only mild or moderate limitations in the paragraph B criteria, relying on mental status examinations showing intact cognition, memory, attention, and cooperative behavior, the claimant's conservative treatment history, and her reported daily activities. (*Id.*). In doing so, the ALJ credited that Plaintiff "has difficulty being around others, experiences paranoia, and has strained relationships with family members," but also noted the conflicting evidence that the "objective clinical findings on mental status examinations showed that the claimant presented as cooperative and communicative." (AR 14 (citing AR 345–526, 536–616)). Thus, because the record does not establish one extreme or two marked limitations, or marginal adjustment under paragraph C, the ALJ's findings that the claimant's impairments did not meet or medically equal a listed impairment is supported by substantial evidence. (AR 14–15).

In sum, Plaintiff's arguments are unconvincing, and the Court finds *Holloman v. Commissioner of Social Security* persuasive in this regard. 639 F. App'x 810, 814 (3d Cir. 2016). There, the Third Circuit stated:

> [The plaintiff] also complains in vague terms that certain impairments were not properly compared, separately and in combination, to the listings. But he does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not. Whether or not the ALJ's analysis of these impairments was sufficiently thorough, [the plaintiff] offers no explanation of how further analysis could have affected the outcome of his disability claim. Even if we found a portion of the ALJ's step-three analysis to be deficient, we would have no reason to conclude that the deficiency in analysis was harmful to [the plaintiff's] claim.

*Id.* at 814. Here, the ALJ adequately considered the combined effects of Plaintiff's medically determinable impairments and did not ignore or minimize any of them. As such, the ALJ's decision is supported by substantial evidence.

### 3. The ALJ Adequately Considered Plaintiff's Medication-Related Side Effects

Plaintiff next argues that the ALJ erred by failing to address her medication-related side effects. (Pl.'s Br. ECF No. 8 at 14–16). She argues that the ALJ failed to consider that her antipsychotic medication caused side effects such as sedation, drowsiness, cognitive impairment, and "[m]ovement [d]isorders." (*Id.* at 17).

This argument lacks any merit. A review of the record fails to reveal any objective medical evidence corroborating Plaintiff's now-claimed side effects from her medication. Thus, Plaintiff's arguments in this regard are not supported by the record. *See Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir.2005) (noting that the ALJ need not include any impairments and limitations that are not "medically established" by the record).[5]

### 4. The ALJ's RFC Determination is Supported by Substantial Evidence

Finally, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ cherry-picked and mischaracterized medical findings and gave too much weight to the findings of the agency specialists, Drs. McIntyre and DeFusco. (Pl.'s Br. ECF No. 8 at 10–12). The Court disagrees.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir.

---

[5] To the extent Plaintiff relies on vague self-reported side effects referenced for the first time at the March 28, 2024 hearing, (*see* AR 34 (Plaintiff stating that her "medication for [her] mental health" is "only worse for me")), the ALJ was only required to consider her statements about the intensity, persistence, and limiting effects of those symptoms insofar as they were supported by medical or other evidence in the record. *See Hopkins v. Comm'r of Soc. Sec.*, 813 F. App'x 775, 780 (3d Cir. 2020) (affirming discounting of subjective symptom testimony unsupported by the record). No such evidence exists here.

1999)); *see also* 20 C.F.R. § 404.1545(a). Here, the ALJ determined that Plaintiff retained the RFC

to perform light work subject to the following limitations:

> [S]he can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can sit for 6 hours and stand/walk for a total of 4 hours in an 8 hour workday. She can occasionally climb ramps and stairs and crouch, never climb [ladders], kneel or crawl. She has no limitation with respect to the ability to stoop or balance on uneven or slippery surfaces. She can understand, remember and carry out simple instructions for 2 hour increments in an 8 hour workday 40 hour workweek. She can tolerate occasional interaction with coworkers, supervisors and the general public. She can adapt to simple changes in workplace routine

 (AR 15).

In determining an individual's RFC, the ALJ must consider all relevant evidence—including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)); *see* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121. The ALJ's finding must "be accompanied by a clear and satisfactory explanation of the basis on which it rests," sufficient for a reviewing court to determine if the decision is supported by substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). The ALJ, however, is not required "to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42. When presented with conflicting evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). And, at bottom, the RFC need only include "credibly established" limitations. *Rutherford*, 399 F.3d at 554.

In this case, the ALJ's RFC determination is supported by substantial evidence. The ALJ summarized Plaintiff's testimony regarding pain and other symptoms due to her medically

19

determinable physical impairments and acknowledged that those impairments could reasonably be expected to produce such symptoms. (AR 15–16). However, the ALJ found Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms not fully consistent with the record. (*Id.*). The ALJ methodically compared each of Plaintiff's allegations with the objective medical evidence, identifying specific inconsistencies, and concluding that the opinions of Drs. McIntyre and DeFusco were persuasive because both were supported by "analysis and consistent with the medical evidence of record." (AR 18–19). For example, the ALJ discounted Plaintiff's claim that she could not lift or carry any weight because imaging showed only moderate osteoarthritis, examinations reflected a normal gait, and there were no significant neurological deficits. (AR 16, 332–33, 335, 438). The ALJ also noted that during a September 12, 2022 visit, despite complaints of hip pain with range of motion, Dr. Levitsky observed a normal gait and intact neurological functioning in the left lower extremity. (AR 18). On this record, the ALJ's RFC assessment is supported by substantial evidence.

The ALJ's RFC analysis regarding Plaintiff's mental impairments is equally supported by substantial evidence.[6] The ALJ first noted that Plaintiff's testimony regarding the intensity of her symptoms did not align with the medical and other evidence of record. (AR 16). Specifically, the ALJ referenced Plaintiff's "ability to perform multiple household chores, prepare meals, shops for groceries, and make jewelry as well as mental status examinations showing intact cognitive

---

[6] Plaintiff also contends that the RFC omitted "[t]ime off-task due to mental health symptoms due [to] work place stress." (*See* Pl.'s Br., ECF No. 8 at 8). Because of this omission, Plaintiff argues, the VE hypotheticals were defective. (*See id.*) But this argument may be waived, as Plaintiff did not raise it during the administrative proceedings. *See Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) (holding that objections to VE testimony not raised below are waived). In any event, the RFC is supported by substantial evidence and an ALJ is required to include in hypotheticals to the VE only those limitations that are credibly established by the record. *Rutherford*, 399 F.3d at 554.

functioning, memory, attention, and concentration." (AR 16–17). The ALJ then analyzed Plaintiff's testimony as to intensity against the medical evidence of record, tracking Plaintiff's treatment by various doctors, therapists, physician assistants, and counselors from 2020 through early 2024. (AR 17–20). For example, the ALJ found Plaintiff's testimony inconsistent with Ms. Umutesi's observations "that the [Plaintiff] presented as alert, oriented to three spheres, and exhibited intact memory, attention, and concentration." (AR 18). Accordingly, the ALJ's assessment of Plaintiff's mental impairments is supported by substantial evidence.

### B. The ALJ Did Not Commit Harmful Error in Failing to Consider Plaintiff's Language and Cultural Barrier

Plaintiff is a native Russian speaker who has limited proficiency in English. (Pl.'s Br. ECF No. 8 at 12–14). She contends that because the ALJ's hypotheticals to the VE did not account for any language or cultural limitations, the VE's testimony was flawed and, in turn, the ALJ's decision relying on that testimony is unsupported.[7] (*Id.* at 12–13).

In response, the Commissioner correctly notes that, since April of 2020, there is a new rule in place governing how to evaluate a claimant's ability to communicate in English. (Def.'s Br., ECF No. 10 at 9); *see* Removing Inability to Communicate in English as an Education Category, 85 Fed. Reg. 10586 (Feb. 25, 2020) (to be codified 20 C.F.R. pts. 404, 416). Pursuant thereto, the Commissioner "no longer consider[s] whether an individual is able to communicate in English at the fifth and final step of the sequential evaluation process (step 5)." 85 Fed. Reg. 10586, 10587.

---

[7]  Plaintiff did not raise any argument concerning language or cultural barriers during the administrative proceedings and now contends for the first time that the VE's testimony was flawed for failing to account for them. Ordinarily, "a claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections." *Fetting*, 62 F.4th at 337. Nonetheless, given Plaintiff's *pro se* status both below and before this Court, and the inquisitorial rather than adversarial nature of administrative Social Security proceedings, the Court will address the argument on the merits. *See Carr v. Saul*, 593 U.S. 83, 95 (2021).

Despite seemingly erecting a categorical bar, courts in this Circuit have *not* interpreted the new regulation as a strict prohibition against considering a claimant's ability to communicate in English. *See, e.g.*, *Grullon v. O'Malley*, No. 23-745, 2024 WL 4643518 (M.D. Pa. 2024). In *Grullon*, the court identified a "macro-economic component to disability analysis" as grounds for continuing to consider English fluency after the new rule. *Id.* at *1. Although the revised regulations altered several aspects of the disability framework, the court declined to read them as "silently repealing or amending" the Department of Labor's DOT to render English fluency wholly immaterial. *Id.* at *8. Rather, the court there held that, at step five, "English language fluency remains a relevant factor in determining the actual ability of a claimant to do certain types of work." *Id.* at *9. Because the record there was "replete" with evidence of the plaintiff's "inability to communicate in any meaningful way in English"—including her need for an interpreter during disability proceedings—the court reversed the ALJ's step five finding that she could perform DOT-listed jobs that, as a matter of economic and practical reality, "require a level of language which the record indicates [she] simply does not possess." *Id.* at *2, 10.

But here, even if the ALJ was required to consider, in some way, the language and cultural barriers Plaintiff alleges, such error was harmless because, unlike *Grullon*, there is ample documentation in the record confirming her English language proficiency. Most evidently, Plaintiff represented herself and, as evidenced by the relevant transcript, participated meaningfully in the proceedings below, which were entirely conducted in English without the assistance of an interpreter. There is nothing in the record that would support a finding that Plaintiff had any difficulty whatsoever in communicating or understanding the proceedings. To the contrary, the record is rife with further examples that belie Plaintiff's claims regarding her difficulty in communicating in English, (*see* AR 29, 50, 60, 131, 179, 323, 345, 371, 439, 445), including a

22

September 30, 2020 treatment note that explicitly ascribes that Plaintiff's "[p]referred language is English." (AR 630). As such, beyond being not raised below, Plaintiff's assertions of error in this regard lack merit.

### C. The ALJ Followed the Appropriate Five Step Sequential Analysis

Finally, Plaintiff argues that the "ALJ failed to apply all applicable statutes and regulations." (Pl.'s Br., ECF No. 8 at 8). The argument also underlies many of her arguments discussed above. (*See, e.g.*, *id.* at 11 (alleging a violation of SSR 96-8p in the context of Plaintiff's argument that the RFC was not supported in substantial evidence.)). However, as described above, the ALJ appropriately adhered to the five-step sequential analysis and based the RFC and all other conclusions on substantial evidence. Plaintiff essentially asks the Court to reweigh the evidence and reach a different conclusion. That request exceeds the limited scope of judicial review under the Social Security Act. *See Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). Here, the ALJ followed the five-step sequential framework, and for all the reasons discussed herein, the resulting findings are supported by "more than a mere scintilla" of evidence. *Biestek*, 587 U.S. at 103.

**CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**

23
